OPINION
Matthew Andres, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment in favor of Drug Emporium, Inc., defendant-appellee.
Appellant claims he began a contractual relationship with appellee in March 1998, pursuant to an oral agreement. The agreement was negotiated through Lee Phrogner, vice-president for appellee. According to appellant, he was hired to exclusively manage and operate appellee's diversion program. Appellant claims he was to "receive a one-half percent (1/2%) commission on all volume of merchandise sold under the diversion program." Appellant explained that the diversion program "is where [appellee] purchases a large quantity of product from a manufacturer and immediately resells, or `diverts,' a portion of that purchase to a wholesaler/distributor for a dollar amount greater than what [appellee] paid, but less than what the wholesaler can obtain from that same manufacturer." The wholesaler/distributor that appellee was selling the product to was Victory Wholesale Grocers ("Victory").
Appellant made arrangements to relocate to Columbus, Ohio, from Texas. Appellant hired Mike Smith to run his business in Texas while he was in Ohio. Appellant stated in his affidavit that he signed Smith to a one-year employment contract with wages and bonuses in excess of $50,000. Appellant also stated he had to spend an additional $4,500 to relocate and outfit Smith with the necessary equipment to perform the job. Appellant claims in his brief supporting his motion for summary judgment that he expended nearly $60,000 in preparation to fulfill his oral agreement with appellee.
Appellant stated in his affidavit that when he arrived at appellee's premises on May 11, 1998, he was told by Phrogner that he would not be the only person running the diversion program, that another individual by the name of Mark Nickley would also be running the program. Dave Kriegle, CEO of appellee, stated in his deposition the reason appellant was to split the role with Nickley was because of Victory. Kriegle stated Victory implied their diversion dealings worth $30,000,000 with appellee could be in jeopardy if they radically changed the way they did business. Appellant felt splitting the diversion program with Nickley would lessen the amount of compensation he would receive because they would only have a certain amount of product to sell.
Appellant stated that he remained with appellee for approximately a week to ten days and left early on his last day because he was upset. Appellant further stated:
 I'm guessing if it was indeed a full two weeks after [my last day] my probable impression at that time was it was all done, because I had not heard back from [appellee], whereas I was expecting to. Within a few days after I walked out that day, I was expecting to hear back in a few days; and I never did.
On September 24, 1999, appellant filed a complaint against appellee. Appellant argued in his complaint that he had a contract with appellee to solely manage and/or operate appellee's diversion program. Appellant claimed that when appellee terminated his contract, it caused him significant damages, including a loss of compensation and profits. Appellant alleged a cause of action for breach of contract in the first count of his complaint and a cause of action for promissory estoppel in the second count of his complaint.
On July 28, 2000, appellant filed a motion for summary judgment for his breach of contract and promissory estoppel claims. On July 31, 2000, appellee also filed a motion for summary judgment, arguing that: (1) appellant's breach of contract claim must fail because of the statute of frauds; (2) appellant's breach of contract claim also must fail because there was no definite term of duration for an employment contract; and (3) appellant's promissory estoppel claim must fail because there was no express promise of employment for a definite duration.
On October 3, 2000, the trial court overruled appellant's motion for summary judgment and sustained appellee's motion for summary judgment. The trial court noted:
 For purposes of summary judgment, the parties do not dispute the existence of an agreement. Moreover, the [appellant] began performance of the alleged contract when he worked at the [appellee's] business premises for a week to ten days. The parties also do not dispute that essential terms of the contract include duration of the contract and compensation. They do dispute whether the contract fails because it does not specify duration of the contract. The parties further dispute whether the contract was definite as to compensation.
***
 The [appellee] asserts in its briefs that the [appellant] was an independent contractor. *** The [appellant] did not contest this characterization of the relationship in his briefs. [Appellee] further points out that Ohio Courts of Appeals have repeatedly extended the employment-at-will doctrine to independent contractors. For purposes of summary judgment, the Court will presume that the agreement created an employment-at-will relationship.
The trial court found appellant did not present any evidence to create a genuine issue of material fact as to whether appellee breached the contract. The court stated:
 The [appellant] does not present any evidence of a compensation agreement between himself and any wholesaler in the diversion program. Nor does he present any evidence that he and the [appellee] later agreed to compensation. Even if there was an agreement as to compensation, the [appellant] has not presented any evidence that he has not been compensated for services rendered.
***
 The [appellant] has not presented any evidence that he was entitled to commissions for sales made under the program after his termination. *** Furthermore, [appellant] has not provided any evidence that the [appellee] refused to compensate him for sales made during [appellant's] tenure. (Citation omitted.)
Appellant appeals this decision and presents the following two assignments of error:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DRUG EMPORIUM, INC. ON MATTHEW ANDRES' BREACH OF CONTRACT CLAIM.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DRUG EMPORIUM, INC. ON MATTHEW ANDRES' PROMISSORY ESTOPPEL CLAIM.
Preliminarily, as this matter arises out of the trial court's grant of summary judgment pursuant to Civ.R. 56, we review the trial court's determination independently and without deference. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107.
In accordance with Civ.R. 56, summary judgment may only be granted if, viewing the evidence most strongly in favor of the non-moving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317,106 S.Ct. 2548, approved and followed).
Appellant's first assignment of error challenges the trial court's conclusion that appellant's breach of contract claims fails because the parties never agreed to a term of duration for the contract.
Appellant's contract claim asserts appellant entered into an oral employment contract with appellee and appellee breached the contract when it failed to grant appellant sole control over the diversion program as had been agreed in the contract. The trial court granted summary judgment for appellee on appellant's contract claim on the grounds that the parties' oral contract did not contain a term of duration and therefore created nothing more than an at-will employment relationship.
Under Ohio law, an oral employment contract which does not include a specific term of duration gives rise to an employment-at-will relationship. Henkel v. Educational Research Council (1976),45 Ohio St.2d 249, syllabus; Penwell v. Amherst Hosp. (1992),84 Ohio App.3d 16, 19. This is true regardless of whether the underlying employment relationship is one of employer-employee or employer-independent contractor. See Krause v. Klein (July 3, 1997), Cuyahoga App. No. 71539; Schneider v. Morse (Aug. 30, 1995), Carroll App. No. 637, unreported; Kegelmeyer v. Fisher (Aug. 29, 1991), Marion App. No. 9-90-45, unreported (applying the employment-at-will doctrine to employer-independent contractor relationships). An employment-at-will relationship may be terminated by either party without cause and for any reason or no reason, so long as the termination is not otherwise contrary to law. Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 103; Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, 541. In this case, inasmuch as the agreement between the parties was indefinite as to the period of time for which appellant would serve as exclusive agent for the diversion program, appellee could change the terms of the employment relationship so that appellant did not have sole control over that program.
Appellant argues the trial court erred in concluding his employment contract lacked a term of duration, as the facts and circumstances surrounding the contract indicate the parties intended the contract to be of long duration. In particular, appellant asserts the evidence that he entered into a one-year contract with the person he hired to run his business in Texas, while he was working for appellee, suggests that the parties envisioned their relationship would be of a long duration. Appellant also argues that the fact that his job responsibilities with appellee could not be accomplished in several weeks or months is indicative of the parties' intent that the contract was proposed to be of long duration.
It is true that when a term of an oral contract is in dispute, a court may look to the facts and circumstances surrounding the contract to determine the disputed term. Henkel, supra; Farmer v. Meigs Center Ltd. (Mar. 30, 1998), Meigs App. No. 96 CA 12, unreported. However, the goal in such circumstances is to ascertain the intent of the parties with respect to the disputed term. Blessing v. Bowersock (Dec. 12, 2000), Franklin App. No 00AP-635, unreported. In the present case, there is no dispute as to the parties' intent with respect to the duration of the employment contract. Appellant testified at his deposition that the parties did not agree to a specific term of duration for his employment. Because the parties entered into the contract knowing it lacked a term pertaining to duration, it must be presumed that the parties intended such a result. Thus, including a duration term in the contract based upon the facts and circumstances surrounding the contract would be improper, as it would thwart the intent of the parties.
Because appellant's oral employment contract did not include a term of duration, the contract gave rise to an at-will employment relationship rather than a contractual employment relationship. Accordingly, the trial court properly granted summary judgment for appellee on appellant's claim for breach of his employment contract. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant asserts that the facts and circumstances surrounding his oral employment contract were sufficient to support his promissory estoppel claim.
In Mers, the Ohio Supreme Court recognized a promissory estoppel exception to the employee-at-will doctrine for circumstances in which an employer has made representations or promises of continued employment to an employee. Id. at 104. In order for an employee to prevail on a promissory estoppel claim in an at-will employment setting, it must be shown that: (1) the employer made a clear and unambiguous promise or representation of continued employment; (2) the employee actually relied upon the employer's promise or representation; (3) the employee's reliance was reasonable and foreseeable; and (4) the employee was actually injured by his reliance. Mers, at 105.
In the present case, appellant argues that the deposition testimony of Lee Pfrogner, a vice-president of appellee's, and David Kriegle, appellee's CEO, establish that the parties agreed appellant's employment would be "long term." Specifically, appellant points to the following testimony by Pfrogner:
 Q. Well, when you had your discussions with [appellant] back in March and I guess there were conversations leading up to his arrival in May, was it your expectation that [appellant] would be at Drug Emporium on a long-term basis? Did [appellant] make a commitment to you to that effect?
A. Yes, he did.
 Q. Was there any time period specified by [appellant] how long he would be there?
 A. I don't think a time was specified, but in my first discussions with Dave Kriegle about putting a process together and [appellant] as a candidate his concern was [appellant] had left us before and are we going to have that problem again.
 And I said I didn't think so, but I would make a point to talk to [appellant] about that and in fact did and he said, no, this is a different deal. I'll stick with it. I won't come and go.
 So it was discussed it would be a long-term commitment?
(Witness nods head up and down.)
There is no dispute about that?
That's correct.
 Kriegle's deposition testimony essentially corroborated Pfrogner's testimony.
Pfrogner's testimony, construed most favorably to appellant, suggests that appellee made generalized and indefinite statements to the effect that appellant's employment would be long-term. The testimony does not, however, indicate or provide any evidence that appellee made a clear and unambiguous promise or representation of continued employment to appellant. It is well-established that vague, indefinite, or nebulous statements or representations of continued employment will not support a promissory estoppel claim. Daup v. Tower Cellular, Inc. (2000),136 Ohio App.3d 555, 563; Penwell, at 20.
Because appellant failed to come forward with any evidence that appellee made a specific promise or representation of continued employment to him, the trial court correctly granted summary judgment for appellee on appellant's promissory estoppel claim. Appellant's second assignment of error is overruled.
Having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
 _______________ BROWN, J.
BRYANT, P.J., and BOWMAN, J., concur.